Mr. Justice Wylie
delivered the opinion of the court.
This is a hill of interpleader brought by the complainant against two parties for the purpose of having the court decide to which of the two a certain fund belongs. In 1818 Daniel Spaulding Jones became a member of the Washington Beneficial Endowment Association of the District of Columbia, paid his fee of initiation and hound himself to pay any dues that might he assessed upon him afterwards for the purpose of meeting the necessities of the company.
This Beneficial Endowment Association is a life insurance company on the mutual plan. The members contribute so much on joining, and when one dies his estate is entitled to a certain fund to be paid by the society, and there is an assessment made upon the members for the purpose of making up that fund. Every man who becomes a member of the association, besides paying his initiation dues, is liable to these calls on the death of his associates, and when he dies the other contributors make up the amount due to his estate.
The certificate of membership recites as follows:
“In consideration of the representations made to the Association in said application and the agreement and the conditions above set forth, all of which are hereby accepted and made part of this contract, and in further consideration of the sum of five dollars in cash, and a note for eight dollars, receipt for which is hereby acknowledged, The Washington Beneficial Endowment Association hereby agrees with the said Daniel S. Jones to pay — unless the beneficiary be changed as hereinafter provided — to Katie Wood Jones, or her legal representatives, the sum of five *27 hundred dollars within sixty days after satisfactory proof of the death of said Daniel S. Jones has been received and accepted by this Association, provided, etc.”
“It is further agreed that no change in the beneficiary named herein, nor assignment of this certificate, can be made without the consent of the Board of Trustees of said Association, and under such conditions as they may prescribe.”
Kate Wood Jones was the wife of Daniel Spaulding Jones. The contract, however, was made with the latter. The trust was to pay to Kate Wood Jones, the wife, or to her legal representatives, the amount of five hundred dollars within sixty days after the death of Daniel S’. Jones. It is a trust then in the Beneficial Endowment Association declared by the husband for the use of his wife, he paying all the consideration, and the contract was with him and not with her. The contract contained a provision that with the consent of the society he might change at any time the beneficiary. He had a right to revoke the interest of his wife and name somebody else as the beneficiary. So that the contract was with him and constantly within his power to change in that respect.
Jones’ wife died about two years before he did; and her legal representatives claim the five hundred dollars because the language of the contract was that the money was to be paid to her or her legal representatives.
If there was no question of the legal representatives there could be no doubt at all that this would be a failure of the trust, and therefore it would be an end of it. The resulting trust would take place In favor of Mr. Jones’ estate. At section 1200 of Story’s Equity Jurisprudence, that doctrine is laid down, and it is a well-established doctrine both as to real and personal estate as to deeds and as to wills. When the object of the trust fails, there is a resulting trust to the grantor. Mrs. Jones dying, it failed as to her, and the question is whether her legal representatives are in any better situation than she was.
In the analogous case of a lapsed legacy, the rule laid down *28 in the books is this, as I shall read from the first volume of Roper on Legacies, page 46.6:
“ The well-established rule respectin g lapse through the death of the legatee in the testator’s lifetime, in cases not affected by the above statute will not be varied by the bequest being made to the legatee, his executors or administrators. For such words are of no importance, inasmuch as those persons would have taken the legacy in succession and by representation, if it had been vested in the legatee, whether expressly named by the testator or not; but since the legatee’s death before the testator, prevented his ever taking any interest in the bequest, it follows that his executors or administrators can by no possibility make a title to that which never rested in the testator. This is the principle of the ■ rule, which equally applies to devisees of real as to bequests of personal estate; so that if lands were devised to A and his heirs, and he died before the devisor, leaving an heir living at the death of the testator, the heir could not make a title to the estate, because he was intended to take it in succession as representative of the devisee, but which was impossible from the accident of the latter dying before the devisor.”
Further, on the same subject, on page 467, the text says:
“Since then a legacy to A, his executors and administrators, will, as we have seen, lapse by his death before- the testator, so will a legacy given to A and his personal representatives; for in each case the additional words are unnecessary and merely express what the law would have directed if the testator had been silent on the subject, viz., that if A survive the testator (an event which the gift implies since no testator could be supposed to mean to give to any but those persons who shall survive him), and afterwards die before the legacy becomes payable, his personal representative shall receive it. Hence, it appears that the mere naming of the executors, administrators, or personal representatives of A is not inconsistent with the rule before mentioned respecting the lapse of legacies, and does not unequivocally show the testator’s intention to sub *29 stitute those persons in the place of A in the event of A’s death before him.”
As this is a trust, it is to be construed according to the circumstances surrounding the case. If a man buy a piece of land or other property and takes’ the title in the name of his son, the presumption will be that it was intended as an advancement to the son. It does not follow necessarily that the title being in the name of the son, the son shall have it. The father may have intended it as an advancement. But the courts will receive evidence upon that subject whether it was intended as an advancement or not, and if it was not intended as an advancement then the father would have it because he paid the money.
So, in looking at these questions of trust, the court will consider all the surrounding circumstances of the case, and when proper and necessary it will receive parol evidence for the purpose of ascertaining the intentions of the parties. In this case we think that no parol evidence could have made the case any clearer than the circumstances upon the face of the transaction. The beneficiary was the wife of Daniel Spaulding Jones. He intended to leave this for her benefit after his death. The fact that she survived him was a fact which he had no contemplation of at the time. The paper did not provide for what did happen, and there is nothing in the case to show that there was any person who could take from her, or who was considered by him in the matter as taking in case of her death because she had no children, she had no distributees, no near relations.. There is no evidence at all to show that there were any persons in the relation of distributees to the wife in whom he felt any interest at all.
So that we are obliged, from all the circumstances, to come to the conclusion that this trust was a trust intended for the wife alone, and that the words “legal representatives,” as here used, have no signification different from that which is attributed to those words generally in the law; that is persons appointed, either by will or by the law, to administer upon her estate after her death. That being *30 the view of the court, we think that her legal representatives could not possibly take anything in this case, because she herself died before the intestate, her husband, and there was a failure therefore of the trust. The fund, therefore, resulted to the husband, and his estate is entitled to the money.
The decree below is affirmed.
The Chief Justice said:
I cannot give my consent to the precedent here established.
Here is a clear expression of the intention of these parties in the policy itself. The undertaking " is to pay this woman or her legal representatives the amount of money stipulated in this policy. The beneficiary of the trust or of the contract dies. That ended it as far as she was concerned. Her legal representatives survive, and this estate must be taken out of their hands by construction.
Now, if the insured had not lived two years after his wife’s death with the power to reappoint, and if he had not failed to exercise it as he might have done, there would be stronger equitable reasons that would lead us to divert this fund from her representatives to his. But if anything is to be argued from his conduct it is that he affirmed the disposition of this insurance money contemplated in the contract. It is not like the case of a lapsed legacy where a testator wills his estate to a given object and that object disappears before he does. In that case the representatives are an incident to the estate created in the devisee. They only have an existence in' that incident, and it would be promoting the incident to assume that they could inherit or could receive what the ancestor could not. This is a direct contract of the underwriters of this party, with a power in the procurer of the agreement to assign it to a different use which he did not see fit to do during his lifetime. And' while I think that my brothers have followed a pretty fair equitable disposition of the matter, for the fund is doing as much good in one direction as in another, I think they are doing it with violence to this contract.
*31 Mr. Justice James said:
The contract was made between the assured and the company or association having one object in contemplation, the naming of a beneficiary; and, as Mr. Justice Wylie has said, I think that the designation of the legal representatives cannot be construed to be the designation of a new party to come in succession. The fact that her legal representatives are named afterwards does not indicate that they are to take as beneficiaries successively nominated. Clearly on the face of it it is but a single designation, and that is to the wife.